UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cr. No. 21-10354-WGY(sss) |
| ) | |
| 10. JAMES RODRIGUES, ) | |
| a/k/a "Bummy," ) | |
| Defendant ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

JAMES RODRIGUES, also known as "Bummy," pleaded guilty to Counts Two and Sixteen of the above-captioned third superseding indictment charging him with conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d) and conspiracy to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846. RODRIGUES pleaded guilty pursuant to a plea agreement tendered under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, where RODRIGUES admitted that more than 500 grams of cocaine was attributable to him. With a total offense level ("TOL") of 21 and a criminal history category ("CHC") of I, the plea agreement contemplated a guideline sentencing range ("GSR") for RODRIGUES of 37-46 months in prison.[1] For the reasons set out below, the government respectfully requests that this Court sentence RODRIGUES to 46 months in prison and three years of supervised release.

The Cameron Street Enterprise. For decades, Boston and surrounding communities have been wracked by murders and other acts of violence committed by and against youths whose families had historical ties to Cape Verde, an island nation off the coast of Portugal. Over time,

---

[1] In the Pre-Sentence Report dated January 23, 2025 ("PSR"), Probation set out a higher guideline range, based largely on the fact that most of the drugs sold by RODRIGUES and his confederates were cocaine base and the offense level for cocaine base is higher than that of powder cocaine. At the time this plea agreement was negotiated, it was the position of the Department of Justice that all cocaine was to be treated as powder cocaine, and the guideline range in the plea agreement were established consistent with this policy. PSR, ¶¶ 25, 37 and note 1.

different designations have been used to identify different factions but the adversaries have always maintained a roughly consistent geographic area of concentration. One faction is primarily based in Dorchester, in the vicinity of Bowdoin Street, Geneva Avenue, Cameron Street, and Hancock Street. The other faction is based near Uphams Corner on the Dorchester – Roxbury neighborhood line, primarily centered in and around Wendover Street, separated from their Dorchester rivals by Columbia Road, a major Boston thoroughfare.

During a two-year investigation by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and the Drug Enforcement Administration ("DEA"), agents identified RODRIGUES as a member of Cameron Street, a criminal enterprise that used violence, threats of violence, and intimidation to preserve, protect, and expand its territory and enhance its prestige, reputation, and position in the community. Agents obtained information about the gang from cooperating witnesses who were themselves associated with Cameron Street. Through the use of consensual recordings, Title III interceptions, search warrants, and evidence seized by state and local law enforcement, agents determined that Cameron Street members possessed, carried, and used firearms to commit murder and assault rivals, especially their chief rival, another Boston gang known as NOB (for Norton, Onley, and Barry Streets, sometimes referred to as Wendover). Agents learned that Cameron Street members distributed controlled substances, committed armed robberies and home invasions, and engaged in human trafficking to generate income for the enterprise.

RODRIGUES As A Member of Cameron Street. Several cooperating witnesses who are themselves associated with Cameron Street identified JAMES RODRIGUES as a member of the enterprise who was primarily involved in drug trafficking, including distributing drugs to and with other Cameron Street members. During the investigation, agents made a series of recorded

controlled purchases of crack cocaine from JAMES RODRIGUES, his brother WILTER RODRIGUES, and JOSE AFONSECA, all members of Cameron Street. On August 5, 2021, agents directed a cooperating witness who was himself associated with Cameron Stret to contact JAMES RODRIGUES to order crack cocaine. RODRIGUES directed the cooperating witness to meet him at 100 Fellsway West, Apartment 401, in Somerville. According to a review of the recording of the meeting and a debriefing of the cooperating witness, once inside the apartment, WLITER cooked the cocaine into crack on the stove in the kitchen. While waiting, the cooperating witness had an extended discussion with AFONSEA about purchasing firearms from him. JAMES directed the cooperating witness to pay WILTER for the crack. The cooperating witness provided WILTER $2,400 in government funds. As WILTER counted the money, JAMES removed a clear plastic bag containing approximately 48 grams of crack cocaine, placed it on a scale, and then handed it to the cooperating witness.

The next day, August 6, 2021, AFONSECA met the cooperating witness in Randolph, Massachusetts and sold him a 9 millimeter pistol and 20 rounds of 9 millimeter ammunition in exchange for $1,300 in government funds. JAMES RODRIGUES was with AFONSECA in AFONSECA's car when they arrived to sell the firearm.

On September 14, 2021, JAMES RODRIGUES, JOSE AFONSECA and an as-yet unidentified third man worked together to sell the cooperating witness approximately 57 grams of cocaine base in exchange for $2,800 in government funds. This sale again took place at 100 Fellsway West, Apartment 401, in Somerville. On February 3, 2022, the cooperating witness met JAMES RODRIGUES and the same unidentified man from the September 14, 2021 deal in a Toyota car parked outside 100 Fellsway West. There, JAMES RODRIGUES distributed

3

approximately 50 grams of cocaine base to the cooperating witness in exchange for $2,800 in government funds.

On Aril 15, 2022, agents executed a series of arrest and search warrants in this case. From 100 Fellsway West, Apartment 401, agents arrested AFONSECA and seized bags of cocaine totally a net weight of 398 grams along with packaging materials, two hydraulic presses, a digital scale, a cell phone, and $14,986 in U.S. currency. When agents searched AFONSECA's cell phone, it included a lengthy March 2022 exchange between AFONSECA and another Cameron Street member, KEIARRI DYETTE, which showed that DYETTE sold cocaine out of the apartment while AFONSECA was away.

<u>Argument</u>. The evidence gathered during this investigation showed that for months, JAMES RODRIGUES worked with several other members of Cameron Street to distribute cocaine from an apartment in Somerville, an apartment that, when searched, had large quantities of cocaine, cash, and drug processing and packaging materials. RODRIGUES was also present when Cameron Street member JOSE AFONSECA negotiated a firearm sale to a cooperating witness. Especially in light of his age (35), these facts alone warrant a sentence at the high end of RODRIGUES's guideline range.

Two other incidents noted in the PSR support the government's high end recommendation. First, as was set out in the government's motion in support of detention (ECF No. 135), Cameron Street members made money through a variety of means, including human trafficking. Agents developed evidence that several Cameron Street members drove and provided protection to providers of commercial sex in exchange for cash. The phone extraction report from a cellular telephone seized from Cameron Street member KENNY ROMERO, a/k/a "KG," showed that he was engaged in this conduct for months leading up to his arrest. In addition, STEVE DEPINA,

4

a/k/a "Stizz," advised a cooperation witness associated with Cameron Street that he was engaged in trafficking women for commercial sex. In addition to his drug sales noted above, RODRIGUES was arrested by the Boston Police engaged in conduct that was strikingly similar to the human trafficking engaged in by other Cameron Street members. See PSR, ¶ 53.[2] Similarly, far from being a non-violent offender, RODRIGUES severely beat a victim during a street encounter and sent the victim to the hospital. See PSR, ¶ 52; Exhibit 1 (incident report).[3] In one case, the charges were dismissed because the prosecution could not secure the cooperation of the provider; in the other, the case was dismissed because of the length of time RODRIGUES had been detained on these federal charges. Both militate in favor of a high end of the guidelines disposition here.

---

[2] On August 7, 2020, an undercover officer with the Boston Police observed a profile on an advertisement on "CallEscort.org," a web site to arrange commercial sex. The advertisement included the name, "Emily," and a phone number. The undercover officer initiated contact with "Emily" and arranged for a commercial sex encounter at a Hampton Inn at 811 Massachusetts Avenue in Boston. "Emily," whose identity was later confirmed, arrived at the location as the front passenger in a white Toyota Corolla with New York plates. As she got out of the car and walked toward the hotel, officers detained her and the driver, JAMES RODRIGUES. Detectives confirmed the phone they had been communicating with for the "date" was on "Emily's" person (when they called the phone, it rang). RODRIGUES made several loud statements to "Emily" as he was being detained, including shouting, "I just dropped her off. Tell them [True Name]!" RODRIGUES claimed he had picked the woman up and given her a ride as a favor, intending to drop her off at the hotel and depart. "Emily" indicated RODRIGUES picked her up from her home and drove her to a "date" in South Bay. RODRIGUES was supposed to wait outside while "Emily" completed the transaction inside, and "Emily" indicated she provided RODRIGUES financial compensation for driving her. "Emily" had two small baggies of cocaine on her person and was determined to have $331 in U.S. currency and a condom. RODRIGUES was found to have $124 in U.S. currency and a condom matching the brand and type found on "Emily." ECF No. 135.

[3] On May 5, 2019, a victim attempted to park his car near his apartment in Revere. Three men were standing drinking in the middle of a parking spot and refused to move. After the victim eventually parked his car, all three men attacked, repeatedly punching and kicking the victim while he was down. The victim suffered a cervical fracture, lacerations to the back of his head, and bruises up and down his body. A witness to the attack told responding officers that one of the attackers lived in the apartment above him. When officers went to the upstairs apartment, they encountered JAMES RODRIGUES, who lived there. When they asked for identification, RODRIGUES pulled his driver's license from a pair of blood-stained jeans in his room. Officers later used surveillance video footage to confirm that some of the clothing items left at the scene of the attack had been worn earlier by RODRIGUES. See Exhibit 1.

Conclusion. The government's 46 month recommendation serves the goals of 18 U.S.C. § 3553(a). The recommended sentence achieves general deterrence, in that it effectively communicates the real-world consequences of joining criminal conspiracies like Cameron Street. A high-end guideline sentence will specifically deter RODRIGUES, promote respect for the law, and most importantly, serve to protect the public from RODRIGUES.

For the reasons set out above, the government respectfully requests that this Court sentence JAMES RODRIGUES to a total of 46 months in prison and three years of supervised release.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:   /s/ Christopher Pohl
Christopher Pohl
Charles Dell'Anno
Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 27, 2025.

/s/ Christopher Pohl
Christopher Pohl
Assistant U.S. Attorney